■ In the Matter of ORLANDO F., a Child Alleged to be Permanently Neglected. NEW YORK FOUNDLING HOSPITAL, Appellant; THEODORA F., Respondent.—Order, Family Court entered June 20, 1975, dismissing the petition pursuant to article 6 of the Family Court Act to terminate parental custody, and further ordering the return of the child to the respondent mother, modified, on the law and the facts, without costs and without disbursements to strike the provision directing the return of the child to the mother, and otherwise affirmed. The proceeding was grounded upon sections 611 and 614 of the Family Court Act that define a "permanently neglected child" as one placed with an authorized agency whose parent has failed "for a period of more than one year following the [placement]" to maintain contact with or plan for the child. The period of lack of contact here was only eight months, insufficient to terminate the parent's custody. However, it has not yet been shown that the parent is in a position to care for the child, and so that provision of the order should be reversed. The motion of the petitioner agency to terminate visitation by the mother, directed by a Justice of this court pending determination of the within appeal, is denied without prejudice. *(Matter of Anonymous [St. Christopher's Home],* 48 AD2d 696.) Motion denied without prejudice. Concur—Stevens, P. J., Markewich, Capozzoli and Lane, JJ.; Kupferman, J., dissents in part in a memorandum, as follows: Kupferman, J. (dissenting in part). While said in another context, the following observation of the Court of Appeals in *Dintruff v McGreevy* (34 NY2d 887, 888), is here applicable: "The rearing of a child requires greater stability than a roller-coaster treatment of custody." The infant here involved was born out of wedlock on June 27, 1971. The natural mother being unable to care for the child, an authorized agency placed the infant with a foster family, with which he has continuously resided. The foster parents wish to adopt the child. The petition alleges that the respondent mother neither communicated with the agency nor attempted to see the infant from January to October, 1972. Because that period of time was only eight months, the majority would deny the petition under sections 611 and 614 of the Family Court Act. However, the sections refer not only to maintaining contact but also to planning "for the future of the child". It is indisputed that the mother on an I. Q. test scores dull normal, and that she has been institutionalized for a majority of her years. Further, since the birth of the child here in question she has had a second illegitimate child. While there

was no contact for only eight months, any other contact was entirely ephemeral. Certainly there was not and really cannot be any planning for the future. The Court of Appeals recently stated: " 'Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust —way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classification is justified by no legitimate state interest, compelling or otherwise.' " *(Matter of Malpica-Orsini,* 36 NY2d 568, 574.) Inasmuch as it is the best interest of the child with which we are concerned, we should not stress technicality in order to keep this child in limbo. While I agree with the court that it should not be returned to the respondent mother, I would go further and terminate parental custody and thus allow the adoption which would best serve the infant.